O

# United States District Court
# Central District of California

MARTIN VOGEL,

    Plaintiff,

v.

DOLANOTTO, LLC,

    Defendant.

Case № 2:16-CV-02488-ODW (KSx)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [36]**

## I. INTRODUCTION

Plaintiff Martin Vogel brings this action against Defendant Dolanotto, LLC, alleging violations of Title III of the Americans with Disabilities Act of 1990 ("ADA") and various California statutes. (*See generally* Compl., ECF No. 1.) Before the Court now is Plaintiff's unopposed Motion for Summary Judgment. (Mot., ECF No. 36.) For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion.[1]

## II. FACTUAL BACKGROUND

Plaintiff is a T-3 paraplegic. (Statement of Undisputed Facts ("SUF"), ECF No. 36-8, ¶ 1.) He is unable to walk or stand, and he needs to use a wheelchair to travel in public. (*Id.*) Defendant is the landlord of a shopping center in Downey, California,

---

[1] After carefully considering the papers filed in support of the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

which contains a Blizzberry storefront. (*Id.* ¶¶ 2, 14.) Plaintiff visited the Blizzberry shop and purchased fruit smoothies on March 3, 2016. (*See id.* ¶ 2.) During his visit to the shopping center, Plaintiff encountered four barriers that impeded his access:

    1. The disabled parking space in front of the Blizzberry[2] has excessively steep slopes. (*Id.* ¶ 5.) According to Plaintiff's expert's measurements, the space had a slope of 8.1 percent, and the rear of the space, which ends in a valley gutter, had a slope of 9.1 percent. (*Id.* ¶ 7.) The expert also noted that the built-up curb ramp of the access aisle encroached on the space, and the encroaching curb ramp had a slope of 35.4 percent. (*See id.* ¶¶ 5, 12.) Plaintiff declares that this steep space makes it difficult for him to disembark from a vehicle, as his wheelchair can roll or his vehicle's lift platform cannot sit level. (*Id.* ¶ 6.)

    2. The disabled parking space lacks adequate signage. (*Id.* ¶ 8.) Plaintiff and Plaintiff's expert both observed that there is no sign depicting the international symbol of accessibility or the words "van accessible" or "minimum $250 fine" adjacent to, within, or near the space, nor is there such a sign at the entrances to the parking lot. (*Id.* ¶ 8; Bishop Decl. Ex. B, ECF No. 36-7, at 5.) Plaintiff expresses that the lack of signage makes it difficult for him to have vehicles that are illegally parked in the space towed away and to identify the space as a disabled parking space. (SUF ¶ 9.)

    3. The access aisle adjacent to the disabled parking space in front of the Blizzberry[3] has excessively steep slopes. (*Id.* ¶ 10.) According to Plaintiff's expert's measurements, the access aisle's curb ramp had a slope of 7.9 percent, and the rear of

---

[2] Plaintiff's declaration in support of his Motion and the Complaint both state that "[a]t least three (3) of the disabled parking spaces" suffer from this barrier to access. (Vogel Decl. ¶ 4(a), ECF No. 36-2; Compl. ¶ 10.) But the pictures Plaintiff took during his visit show only a single disabled parking space. *See* Vogel Decl. Ex. B, ECF No. 36-4, at 6–9. Plaintiff's expert also indicated there is only one disabled parking space in the lot, and he only evaluated the parking space appearing in Plaintiff's pictures. (*See* Bishop Decl. Ex. B, ECF No. 36-7, at 4 photo 1 (displaying one parking space from aerial view of facility); *id.* at 5 (discussing one parking space).)

[3] Plaintiff's declaration in support of his Motion and the Complaint both state that "[a]t least two (2) of the access aisles" suffer from this barrier to access. (Vogel Decl. ¶ 4(c); Compl. ¶ 10.) Plaintiff's pictures and Plaintiff's expert both identify only one access aisle. (*See* Vogel Decl. Ex. B, at 6–9; Bishop Decl. Ex. B, at 4 photo 1, 6–8 & photos 3–8.)

the access aisle, which ends in a valley gutter, had a slope of 8.8 percent. (*Id.* ¶ 12.) Plaintiff notes that having a non-level access aisle makes it difficult him to disembark from a vehicle, as his wheelchair can roll or his vehicle's lift platform cannot sit level. (*Id.* ¶ 11.)

4. The access aisle was obstructed by a "right turn only" sign. (*Id.* ¶ 13.) Plaintiff's expert, who visited the facility eighteen months after Plaintiff did, did not observe the sign. (*See* Bishop Decl. Ex. B, at 5 photo 2, 6 photo 3, 10.)[4]

Plaintiff expresses that he enjoys the shopping center's location and the stores within it. He states that he intends to return to the facility and "would like to see it made accessible to me." (SUF ¶ 3.)

Plaintiff seeks summary judgment as to his first claim for violations of the ADA, his third claim for violations of the Unruh Civil Rights Act ("UCRA"), and his fourth claim for violations of California Health and Safety Code.[5] (*See generally* Mot. at 4–10.)

### III. LEGAL STANDARD

#### A. Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

---

[4] In his Motion, Plaintiff concedes that the sign has been removed, and that he "does not seek summary judgment as to this barrier." (Mot. at 10.)

[5] The Motion does not seek summary judgment with respect to the second claim for violations of the California Disabled Persons Act. Moreover, the Motion does not seek summary judgment of the ADA, UCRA, and Health and Safety Code claims with respect to one of the four identified barriers to access, which was remedied after Plaintiff filed this action. *See supra* note 4. Therefore, the Court treats the Motion as one seeking partial summary judgment. *See* Fed. R. Civ. P. 56(a).

(1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 249.

A party seeking summary judgment bears the initial burden to establish the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. To satisfy this burden, the moving party may simply point to portions of pleadings, admissions, answers to interrogatories and depositions which, along with affidavits, show the absence of a genuine issue of material fact. *See id.* If the moving party satisfies its burden, the nonmoving party must produce specific evidence to show that a genuine dispute exists. Fed. R. Civ. P. 56(e).

"In ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50.

### B. Subject Matter Jurisdiction

Federal courts must examine jurisdictional issues at every stage of the litigation. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999) ("[F]ederal courts are required sua sponte to examine jurisdictional issues such as standing."). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (citations omitted). To have standing under the ADA, a plaintiff must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the defendant's actions, and that the injury can be redressed by a decision in his favor. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc).

4

"Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants." *Deakins v. Monaghan*, 484 U.S. 193, 199, 108 S. Ct. 523, 98 L. Ed. 2d 529 (1988). Mootness is a threshold jurisdictional issue. *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 537, 98 S. Ct. 2923, 57 L. Ed. 2d 932 (1978). "In general, a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982) (per curiam) (citations and internal quotation marks omitted). In an ADA case, in which a plaintiff can recover only injunctive relief, the Ninth Circuit has held that "a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011); *see also Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134, 1145 (S.D. Cal. 2006) (finding ADA claim moot after defendant remedied a ramp slope plaintiff alleged was too steep).

### IV. DISCUSSION

#### A. Americans with Disabilities Act

Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation. *See* 42 U.S.C. § 12182(a). The ADA authorizes only injunctive relief for disabled individuals who suffer prohibited discrimination and does not provide for the recovery of monetary damages by private individuals. *See* 42 U.S.C. § 12188(a)(2); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). For an ADA claim based on architectural barriers to access, this final element can be

established by showing that (1) the existing facility presents an architectural barrier prohibited by the ADA or its implementing regulations and (2) the barrier's removal is readily achievable. *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000); *see* 42 U.S.C. § 12182(b)(2)(A)(iv) (defining prohibited discrimination to include "the failure to remove architectural barriers" in existing facilities where such removal is "readily achievable"). The Court addresses each element in turn.

### 1. Plaintiff Is Disabled

Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The ADA lists "walking" and "standing" as "major life activities." *Id.* § 12102(2)(A). Plaintiff Vogel is a paraplegic who is unable to walk or stand. (SUF ¶ 1.) He is disabled within the meaning of the ADA.

### 2. Defendant Leases a Public Accommodation

The ADA's definition of "public accommodation" includes an "establishment serving food or drink" and a "shopping center, or other sales or retail establishment." 42 U.S.C. § 12181(7)(B), (E). Defendant admitted it is the landlord of the shopping center containing the Blizzberry. (SUF ¶ 14 (citing Answer, ECF No. 13, ¶ 5).) Plaintiff purchased fruit smoothies from the Blizzberry store in the shopping center. (SUF ¶ 2; *see* Vogel Decl. Ex. A, ECF No. 36-3.) This element is satisfied, as Defendant "leases . . . a place of public accommodation," the shopping center housing the Blizzberry store. 42 U.S.C. § 12182(a); *accord* 28 C.F.R. § 36.201(b) ("Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part.").

### 3. Architectural Barriers Caused Plaintiff to Be Denied Public Accommodations Due to His Disability

The ADA proscribes discrimination in the form of "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily

achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Plaintiff contends that each of the extant architectural barriers is proscribed by the ADA Accessibility Guidelines ("ADAAG").[6]

The ADAAG requires vehicle standing spaces and access aisles to "be level with surface slopes not exceeding 1:50 (2%) in all directions." ADAAG § 4.6.3 (1991); *id.* § 4.6.6; *see* ADAAG § 502.4 (2010) ("Slopes not steeper than 1:48 [approximately 2.08 percent] shall be permitted."). Here, both the parking space and the access aisle are excessively steep: the parking space has a slope of 8.1–9.1 percent, (SUF ¶ 7), and the access aisle has a slope of 7.9–8.8 percent, (*id.* ¶ 12).

Moreover, the ADAAG requires an accessible parking space to "be designated as reserved by a sign showing the symbol of accessibility," and such a sign "shall be located so [it] cannot be obscured by a vehicle parked in the space." ADAAG § 4.6.4 (1991); *see* ADAAG § 502.6 (2010) ("Parking space identification signs shall include the International Symbol of Accessibility . . . . Signs identifying van parking spaces shall contain the designation 'van accessible.' Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign."). Neither Plaintiff nor his expert observed any signs containing the symbol of accessibility, denoting the space as "van accessible," or otherwise identifying the space as disabled parking. (SUF ¶ 8; Bishop Decl. Ex. B, ECF No. 36-7, at 5.)

These barriers affect Plaintiff's access to the facility due to Plaintiff's disability. The excessive slopes make it difficult for Plaintiff to disembark from a vehicle because his wheelchair can roll and his vehicle's lift platform cannot sit level. (SUF ¶¶ 6, 11.) Moreover, the lack of adequate signage prevents Plaintiff from having cars illegally parked in the disabled space towed away or identifying the space as designated for disabled persons. (*Id.* ¶ 9.)

---

[6] The record before the Court on this Motion does not indicate when the facility was constructed or altered, so the Court weighs Defendant's compliance with both the 1991 and 2010 ADAAG standards. *See* 28 C.F.R. § 36.406(a) (establishing that 2010 standards apply to construction and alterations undertaken after March 15, 2012).

### 4. Removal of the Barriers Is Readily Achievable

"Readily achievable means 'easily accomplishable and able to be carried out without much difficulty or expense.'" *Molski*, 481 F.3d at 730 (quoting 42 U.S.C. § 12181(9)). Four considerations guide whether remedial action is readily achievable:

(A) the nature and cost of the action needed under this Act;

(B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;

(C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9). Federal regulations list examples of readily achievable barrier removals, including "[i]nstalling ramps" and "[c]reating designated accessible parking spaces." 28 C.F.R. § 36.304(b)(1), (18).

The Ninth Circuit has yet to decide which party has the burden of proving that removal of an architectural barrier is readily achievable, *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998 (C.D. Cal. 2014), but the Court is persuaded by the burden-shifting framework articulated in *Colorado Cross Disability v. Hermanson Family, Ltd.*, 264 F.3d 999 (10th Cir. 2001). Under this framework, the "[p]laintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable," and the burden shifts to the defendant to show that barrier removal is not readily achievable if the plaintiff makes this showing. 264 F.3d at 1006.

Here, although three of the considerations guiding whether remedial action is readily achievable look to the defendant's resources, *see* 42 U.S.C. § 12181(9)(B)–(D), the record is sparse as to Defendant's financial and operational capacity. The Court surmises from Defendant's Answer that it collects rent from its tenants and, therefore, has a non-negligible source of rent income. (*See* Answer ¶ 5 (admitting that "Defendant is the landlord of the 'Shopping Center' as defined in the Complaint").)

As to the first consideration, the "nature and cost" of remdiation, "[c]reating designated accessible parking spaces" and "[i]nstalling ramps" are actions expressly listed as examples of readily achievable steps to remove barriers. 28 C.F.R. § 36.304(b)(1), (18). Defendant could remedy the issue by designating a new disabled parking space and access aisle in the parking lot without an impermissible slope to replace the current space. Given that creating "*designated* accessible parking spaces" requires installation of a sign under ADAAG § 502.6 (2010), it may be inferred from 28 C.F.R. § 36.304(b)(18) that the act of installing a sign designating a parking space as accessible is readily achievable.

Further, the cost of remedial actions is low, suggesting removing the barriers is readily achievable. *See* 42 U.S.C. § 12181(9)(A). Plaintiff's expert estimated that the total remedial cost "would be less than $5,000" and that such a remedial project "is very common . . . and can be accomplished by most paving or general contractors." (Bishop Decl. Ex. B, at 10.)

Defendant neither responded to the Motion nor proffered any evidence, denials, or affirmative defenses suggesting it lacks the few resources necessary to remedy the architectural barriers. Thus, the Court concludes that removing the barriers to access Plaintiff identified is readily achievable.

In sum, Plaintiff has established all the necessary elements for his Title III ADA claim. Consequently, summary judgment is **GRANTED** as to the three extant access barriers: (1) the excessively steep parking space slope, (2) the lack of signage, and (3) the excessively steep access aisle slope.

### B. Unruh Civil Rights Act

"In the disability context, California's Unruh Civil Rights Act operates virtually identically to the ADA." *Molski*, 481 F.3d at 731. "A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 . . . shall also constitute a violation of" the UCRA. Cal. Civ. Code § 51(f). Because Plaintiff is entitled to summary judgment on the ADA claim, he is entitled to summary judgment on the UCRA claim.

A person denied rights provided by the UCRA may recover monetary damages, or statutory damages of no less than $4,000, as well as attorney fees. Cal. Civ. Code § 52(a). "The litigant need not prove [he] suffered actual damages to recover the independent statutory damages of $4,000." *Molski*, 481 F.3d at 731. Plaintiff does not offer any proof of actual damages, and he describes only one documented visit to the shopping center on March 3, 2016. (SUF ¶ 2.) Therefore, Plaintiff may recover statutory minimum damages of $4,000 in addition to attorney fees. Therefore, the Motion is **GRANTED** as to the UCRA claim.

### C. California Health and Safety Code

In California, public accommodations must conform to Chapter 7 of the California Government Code, § 4450 *et seq.* Cal. Health & Safety Code § 19956. In turn, Government Code § 4450(b) requires that facilities be "accessible to and usable by persons with disabilities." Nevertheless, certain classes of facilities are exempted from this requirement. *See, e.g.*, Cal. Health & Safety Code § 19956. Public accommodations constructed before July 1, 1970 are subject to the access requirements only "when any alterations, structural repairs or additions are made to such public accommodations. This requirement shall only apply to the area of specific alteration, structural repair or addition and shall not be construed to mean that the entire building or facility is subject to this chapter." *Id.* § 19959.

Plaintiff proffers no evidence regarding the dates of construction or alteration of the facility. Because the record does not demonstrate that the facility and its parking

accommodations were constructed, altered, or repaired after July 1, 1970, Plaintiff has not established that the shopping center generally or the parking lot specifically is subject to the Health and Safety Code provision he invokes. Therefore, he is not entitled to summary judgment as to this claim. *Cf. Yates v. Bacco*, No. C-11-01573 DMR, 2014 U.S. Dist. LEXIS 35340, 2014 WL 1089101, at *14 (N.D. Cal. Mar. 17, 2014) (deeming a Health and Safety Code claim abandoned because no evidence in the record demonstrated that defendant's building was constructed or altered after July 1, 1970); *Hubbard v. Gupta*, No. 04cv2591-LAB (POR), 2006 U.S. Dist. LEXIS 83544, at *19–20 (S.D. Cal. Nov. 14, 2006) (holding that "plaintiffs bear the burden of proving violations of health and safety statutes," including adducing evidence that facility in question was constructed or altered after July 1, 1970). Summary judgment is **DENIED** as to this claim.

### D. Dismissal as Moot of ADA Claim Based on "Right Turn Only" Sign Barrier

Plaintiff concedes that one of the barriers to access he identified in his Complaint, a "right turn only" sign obstructing the access aisle, was removed after he filed this action. (*See* Mot. at 10 (stating that Plaintiff "does not seek summary judgment as to this barrier"); *compare* Vogel Decl. Ex. B, at 6 (showing the "right turn only" sign), *with* Bishop Decl. Ex. B, at 5 photo 2, 6 photo 3, 10 (showing the access aisle without the sign).)

"[A] defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011). Here, the "right turn only" sign has been removed, so the ADA claim is moot to the extent it is based on this sign. As the Court grants the Motion as to the other three of four access barriers Plaintiff identifies in the Complaint, the Court sua sponte **DISMISSES** the balance of the ADA claim as moot.

### E. Order to Show Cause re Subject Matter Jurisdiction

Given the Court's disposition of the Motion, two claims persist: the second claim for violations of the California Disabled Persons Act and the fourth claim for violations of the California Health and Safety Code.

The Court may not be able to adjudicate the remaining claims given the resolution of the Motion in Plaintiff's favor. To have Article III standing, a plaintiff must demonstrate that the injuries the defendant caused can be redressed by a decision in his favor. *Chapman*, 631 F.3d at 946. Even if judgment were entered in Plaintiff's favor with respect to the remaining claims, it is not clear that Plaintiff could recover additional relief not already afforded by judgment in his favor on the ADA and UCRA claims. As to the Disabled Persons Act claim, Plaintiff cannot recover damages if he has recovered under the UCRA. *See* Cal. Civ. Code § 54.3(c). Moreover, Plaintiff is already entitled to attorney fees as relief afforded by the UCRA, *id.* § 52(a), which is the only other category of relief available to him under the Disabled Persons Act claim, *see id.* § 54.3(a). Prevailing on the Health and Safety Code claim would allow Plaintiff to recover attorney fees and injunctive relief. *See* Cal. Health & Safety Code § 19953. But Plaintiff is already entitled to those categories of relief based on the grant of summary judgment on his UCRA claim, Cal. Civ. Code § 52(a), and the ADA claim, 42 U.S.C. § 12188(a)(2), respectively. The Court is uncertain whether a judgment on the Disabled Persons Act and Health and Safety Code claims would redress any of Plaintiff's injuries because all requested relief is already recoverable under Plaintiff's other two claims, for which he is entitled to summary judgment.

Moreover, the Court is unsure whether the continued exercise of supplemental jurisdiction over these state law claims is appropriate. Plaintiff alleges that the Court has jurisdiction over the remaining claims under 28 U.S.C. § 1367 because they arise from the same nucleus of operative fact as Plaintiff's ADA claim, over which this Court has original jurisdiction. (Compl. ¶¶ 3–4.) Nevertheless, a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all

claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Upon entering judgment on the ADA claim and granting injunctive relief as to the three extant architectural barriers, and upon dismissing the balance of the ADA claim as moot, the Court may dismiss the remaining state law claims in its discretion. The Court is inclined to do so.

Thus, the Court **ORDERS** Plaintiff to **SHOW CAUSE**, in writing, no later than **March 5, 2018**, why this Court should not dismiss the second and fourth claims for lack of subject matter jurisdiction.

### V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment as to the first claim for violations of the Americans with Disabilities Act of 1990 and the third claim for violations of the Unruh Civil Rights Act. The Court **DENIES IN PART** the Motion for Summary Judgment as to the fourth claim for violations of the California Health and Safety Code.

The balance of the first claim for violations of the Americans with Disabilities Act of 1990 is **DISMISSED**, as moot, as explained above.

Plaintiff is **ORDERED TO SHOW CAUSE** why the Disabled Persons Act and California Health and Safety Code claims should not be dismissed for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

February 13, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**