O

# United States District Court
# Central District of California

MARTIN VOGEL,

    Plaintiff,

v.

DOLANOTTO, LLC,

    Defendant.

Case No. 2:16-CV-02488-ODW-KSx

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND LITIGATION EXPENSES [50]**

## I. INTRODUCTION

Plaintiff Martin Vogel filed this action against Defendant Dolanotto, LLC, alleging violations of Title III of the Americans with Disabilities Act of 1990 ("ADA") and various California statutes. (*See* Compl., ECF No. 1.) On February 15, 2018, the Court entered judgment in favor of Plaintiff after granting in part and denying in part Plaintiff's unopposed motion for summary judgment. (ECF Nos. 47, 49.) Plaintiff now moves for attorneys' fees, costs, and litigation expenses. (ECF No. 50.) For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion.[1]

---

[1] After carefully considering the papers filed in support of the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

## II. FACTUAL BACKGROUND

Plaintiff is a T-3 paraplegic. (Statement of Undisputed Facts ("SUF") ¶ 1, ECF No. 36-8.) He is unable to walk or stand, and needs to use a wheelchair to travel in public. (*Id.*) Defendant is the landlord of a shopping center in Downey, California, which contains a Blizzberry storefront. (*Id.* ¶¶ 2, 14.) Plaintiff visited the Blizzberry shop and purchased fruit smoothies on March 3, 2016. (*See id.* ¶ 2.) During his visit to the shopping center, four barriers, which the Court more fully described in its summary judgment Order, impeded Plaintiff's access. (Order 1–2, ECF No. 47.)

Plaintiff sought summary judgment as to his first claim for violations of the ADA, his third claim for violations of the Unruh Civil Rights Act ("UCRA"), and his fourth claim for violations of California Health and Safety Code. (*See generally* Mot. 4–10, ECF No. 50-1.) Defendant failed to oppose the Motion, and on February 13, 2018, the Court granted summary judgment as to Plaintiff's first claim for violations of the ADA, with the exception of the fourth alleged barrier, which the Court dismissed, as moot. (ECF No. 47.) The Court also granted summary judgment on Plaintiff's third claim for violations of the UCRA. (*Id.*) Finally, the Court denied summary judgment as to Plaintiff's fourth claim for violations of the California Health and Safety Code. (*Id.*) The Court also ordered Plaintiff to show cause why the Disabled Persons Act of California and Health and Safety Code claims should not be dismissed for lack of subject matter jurisdiction. (*Id.*) In response, Plaintiff withdrew those two claims. (Not. of Withdrawal, ECF No. 48.)

On February 15, 2018, the Court entered judgment in favor of Plaintiff for $4,000, and ordered Defendant to remove the slopes/cross-slopes that exceed 2.08%, provide the requisite signage, and pay Plaintiff's reasonable costs and attorneys' fees. (ECF No. 49.) On March 1, 2018, Plaintiff moved for an award of attorneys' fees,

1 costs, and litigation expenses, totaling $38,022.20. (Mot. 7.) Defendant opposed the Motion.[2] (ECF No. 52.)

### III. LEGAL STANDARD

Pursuant to 42 U.S.C. § 12205, a federal court may award reasonable attorneys' fees to the prevailing party in an action under the ADA. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 78 F. Supp. 3d 1289, 1297 (C.D. Cal. 2015). Additionally, any person found in violation of the UCRA "is liable for . . . any [attorneys'] fees that may be determined by the court." Cal. Civ. Code § 52(a). Because the legislature passed the ADA in part "'to ensure effective access to the judicial process' for persons with civil rights grievances," recovery of attorneys' fees "is the rule rather than the exception." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citation omitted); *Jankey v. Poop Deck*, 537 F.3d 1122, 1131 (9th Cir. 2008) (internal quotation marks and citation omitted). Documentation submitted in support of a motion for attorneys' fees must apprise the Court of the nature of the activity and should be sufficient to satisfy the Court that the hours expended were actual, non-duplicative, and reasonable. *See K.M. ex rel. Bright*, 78 F. Supp. 3d at 1303.

Reasonableness is generally determined using the "lodestar" method, where a court considers the work completed by the attorneys and multiplies "the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). The moving party bears the burden of producing evidence that the billing rates and hours worked are reasonable. *Id.* at 622–23.

"Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Camacho v. Bridgeport Fin.,*

---

[2] Defendant's counsel notes that, although Defendant could not afford to pay counsel to oppose the instant Motion, counsel is "so compelled" to respond on behalf of his client. (Opp'n 2, ECF No. 52.) He also explains that cost prohibited Defendant from opposing Plaintiff's Motion for Summary Judgment. (*See* Decl. of Attorney Gavril T. Gabriel ("Gabriel Decl.") ¶ 5, ECF No. 52-1.)

*Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citation omitted). In such cases, a district court may make upward or downward departures from the presumptively reasonable lodestar figure based on the following factors, as set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), *abrogated on other grounds by City of Bulington v. Dague*, 505 U.S. 557 (1992): (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the necessary skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys on the case; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Courts "need not consider all twelve factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award." *Kessler v. Assocs. Fin. Servs. Co. of Hawaii*, 639 F.2d 498, 500 n.1 (9th Cir. 1981).

## IV. DISCUSSION

Plaintiff seeks attorneys' fees of $35,211.25, and litigation costs and expenses of $2,810.95, totaling $38,022.20. (Mot. 7.) The Court will address each in turn.

**A. Attorneys' Fees**

Plaintiff uses the lodestar method to calculate attorneys' fees and requests $35,211.25. (*Id.*; Decl. of Scottlynn J Hubbard ("Hubbard Decl."), Ex. 2, ECF No. 50-2.) Under the lodestar method, attorneys' fees are calculated by multiplying the reasonable hourly rate in the community at issue with the number of hours reasonably expended on litigation. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990). As such, the Court evaluates the reasonableness of each factor independently.

**1. Reasonable Hourly Rate**

Plaintiff seeks $600 per hour for lead counsel Scottlynn Hubbard and senior partner Lynn Hubbard; $400 per hour for associate Khushpreet Mehton; $300 per hour for associate Stephanie Ross; and $275 per hour for paralegals assigned to the case. (Hubbard Decl., Ex. 2.) To determine whether the hourly rates are reasonable, the Court can consider whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Trs. of S. Cal. IBEW–NECA Pension Plan v. Electro Dynamic Servs.*, CV 07–05691-MMM-PLAx, 2008 WL 11338230, at *5 (C.D. Cal. Oct. 14, 2008) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). The relevant community is the district in which the adjudicating court "sits." *Camacho*, 523 F.3d at 979. The party seeking attorneys' fees may satisfy its burden of showing that the proposed hourly rate is reasonable by submitting affidavits of counsel, affidavits of other counsel in the relevant community, and by providing case law examples of the relevant community rate. *See id.* at 980–81.

Here, Plaintiff submits a declaration from lead counsel Scottlynn Hubbard, detailing his experience and that of other counsel from his office who worked on this case. (Hubbard Decl. ¶¶ 1–31.) Scottlynn Hubbard has substantial experience in ADA litigation—as he has litigated over 1,400 ADA lawsuits throughout his career—and claims that he is recognized as an expert in ADA law. (*Id.* ¶¶ 1–5.) Also, roughly twice a year, Scottlynn Hubbard hosts a conference on "cutting-edge" issues in disabled access law. (*Id.* ¶ 11.) Attorney Lynn Hubbard has been a trial attorney for over 35 years, litigated over 1,000 ADA or Title 24 cases, and more than 95% of his practice the last ten years has been dedicated to protecting the rights of the disabled.[3] (*Id.* ¶¶ 17, 22–23.) Associate attorneys Khushpreet Mehton and Stephanie

---

[3] Lynn Hubbard is suspended from the practice of law. *Matter of Hubbard*, No. 11-O-14081, 2016 WL 4184002, at *14 (Cal. Bar Ct. Aug. 4, 2016). Part of the reason the State Bar suspended him related to misrepresentations to the Court, and opposing counsel, in representing the same serial ADA plaintiff, as in this case, Martin Vogel. *See Vogel v. Sym Properties, LLC*, No. CV 15–09855–AB (ASx), 2017 WL 4586348, at *7 n.4 (C.D. Cal. Aug. 4, 2017) (citations omitted) ("Plaintiff's counsel, Lynn Hubbard III, who at one point represented Plaintiff in this case, is suspended from

Ross have both regularly represented disabled plaintiffs in ADA claims during their time at Disabled Advocacy Group, APLC ("DAG"). (*Id.* ¶¶ 25–26.) Lastly, the qualifications of Plaintiff's paralegals meet the requirements of California's Business & Professions Code § 6450, enabling each to perform legal tasks. (*Id.* ¶¶ 27–31.)

Defendants have not opposed DAG's proposed hourly rates. However, recent decisions establish that the current prevailing market hourly rate for lead ADA attorneys in this community is $300–$425 per hour. *See Langer v. S. W. Med. Care Inc.*, No. 5:17-cv-00959-ODW-DTB, 2018 WL 456131, at *4 (C.D. Cal. Jan. 17, 2018) (finding that $425 was a reasonable hourly rate for similar attorneys in the Central District with extensive experience in ADA litigation); *see also O'Campo v. Ghoman*, No. 2:08-CV-1624-KJM-DB-PS, 2017 WL 3225574, at *7 (E.D. Cal. July 31, 2017) ("Accordingly, the undersigned finds that a reasonable hourly rate for the work performed by attorneys Scottlynn J. Hubbard and Lynn Hubbard is $300 per hour."); *Chapman v. Pier 1 Imports (U.S.), Inc.*, No. 2:04-CV-01339-MCE-AC, 2017 WL 999253, at *3 (E.D. Cal. Mar. 15, 2017) ("While the Hubbards are undoubtedly experienced in disability access litigation, they are no more so than other counsel who have been awarded hourly rates in that range. Consequently, Plaintiff is awarded $300 per hour for the time expended by Lynn and Scottlynn Hubbard in this matter.").

As for the associates, Plaintiff seeks a rate of $400 per hour for Khushpreet Mehton and $300 per hour for Stephanie Ross. (Hubbard Decl., Ex. 2.) These attorneys do not possess the same reputation or skill as the Hubbards, and recent decisions in neighboring districts have limited these exact DAG associates to rates of $200 or less. *See O'Campo*, 2017 WL 3225574, at *7 (awarding associates

---

practicing law for a year as a result [of] his misrepresentations made in [*Vogel v. Tulaphorn*]."). Billing records show that Lynn Hubbard prepared for, and attended mediation in this case, on October 26, 2016—more than two months after the State Bar issued its decision suspending him. (*See* Hubbard Decl., Ex. 2); *Matter of Hubbard*, 2016 WL 4184002, at *14. Although Lynn Hubbard continued to practice law after the State Bar's decision, his suspension did not go into effect until December 29, 2016, when the California Supreme Court imposed the discipline. As of February 26, 2018, Lynn Hubbard remains suspended from the practice of law in California.

Khushpreet Mehton and Stephanie Ross $200 per hour less than a year ago); *Chapman*, 2017 WL 999253, at *3 (finding that $200 per hour was a reasonable hourly rate for DAG associates).

Given the prevailing rates established above and the lack of complexity in this case that was not defended until now, the Court reduces the hourly rate for the services of Scottlynn Hubbard and Lynn Hubbard to $300 per hour, Khushpreet Mehton's rate to $200 per hour, and Stephanie Ross's rate to $200 per hour.

The Court also takes issue with the $275 per hour Plaintiff's counsel requests for paralegal work. Plaintiff does not submit any affidavits from other attorneys in the relevant community supporting this rate. Although Plaintiff mentions a previous case where he submitted the declaration of attorney Russell Handy, another ADA practitioner in the Central District who indicated DAG's hourly rates were reasonable, Plaintiff does not provide such declaration here. (Mot. 5–6.) Notably, in the case to which Plaintiff refers, the paralegals from DAG worked for as low as $125–$150 per hour, as opposed to the $275 that the firm is now—less than a year later—requesting. *Rocca v. Den 109 LP*, No. 2:14-CV-00538-ODW (MRW), 2017 WL 2562097, at *3 (C.D. Cal. June 13, 2017); (Hubbard Decl., Ex. 2.) Therefore, the declaration of attorney Russell Handy does not support the conclusion that the $275 hourly rate for the paralegals is reasonable; instead, it highlights how unreasonable it is.

Next, Plaintiff cites *Camarillo v. City of Maywood*, where an affidavit from a licensed practitioner who was familiar with experienced paralegals attested that rates of $125 and $235 were reasonable for paralegals. No. 2:07-CV-03469-ODW (SHx), 2015 WL 505886, at *9 (C.D. Cal. Feb. 4, 2015), *vacated and remanded sub nom. Gonzalez v. City of Maywood*, 671 F. App'x 564 (9th Cir. 2016); (Mot. 5.) However, again, Plaintiff does not provide a similar declaration to the Court, and Plaintiff's mischaracterization of DAG's hourly rates in case law is unsettling.

Plaintiff alleges that DAG began charging $175 per hour for paralegals "four years ago," and points to *Rush v. Denco Enterprises, Inc.*, No. EDCV 11-0030 DOC

(DTBx), 2012 WL 3206674, at *4 (C.D. Cal. Aug. 3, 2012). (Hubbard Decl. ¶ 32.) Upon a closer look, the court in *Rush* rejected DAG's proposed paralegal rates. *Rush*, 2012 WL 3206674, at *4. The court explained that it was "extremely concerned about Plaintiff's potential misrepresentations" because DAG's rates almost doubled in the span of two months. *Id.* Ultimately, the court characterized DAG's proposed rates as "patently unreasonable" and a "blatant misrepresentation" and reduced the hourly rates by 58%, resulting in an hourly rate of $101.05 for paralegals. *Id.*

Plaintiff also directs the Court to *Kohler v. Bed Bath & Beyond of California, LLC*, No. 11-CV-04451-RGK-SPX, 2012 WL 12885071, at *3 (C.D. Cal. Sept. 26, 2012). (Hubbard Decl.¶ 32.) In that case, DAG attorneys alleged they did not object to defense counsel's rates of "$640 for lead/senior counsel, $450 for associates and $290 for paralegals" because they were "reasonable." (*Id.* ¶ 32 n.9.) Yet, the court found the rate to be excessive and decreased it to a blended hourly rate of $350 per hour. *Kohler*, 2012 WL 12885071, at *3. Moreover, the Ninth Circuit later reversed the award of attorneys' fees and each party bore its own costs. *Kohler v. Bed Bath & Beyond of California, LLC*, 780 F.3d 1260, 1267 (9th Cir. 2015). Therefore, the Court is left with little evidence to justify DAG's proposed rate for paralegals.

In light of the considerations above, the Court reduces the paralegal rate to $125 per hour. *See Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 737 (11th Cir. 1988) ("[W]here the court believes that the matter has not been handled efficiently, the court may reflect that fact by decreasing the hourly rate to the market rate charged by lawyers of less skill and experience.").

### 2. Number of Hours Reasonably Expended

A district court has "wide latitude in determining the number of hours that were reasonably expended by the prevailing lawyers." *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001). The fee applicant "bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). Here,

Plaintiff's attorneys and paralegals allege they spent 82.55 hours on this matter. (Mot. 6; Hubbard Decl., Ex. 2.) This total consists of 26.8 hours from Scottlynn Hubbard, 5.75 hours from Lynn Hubbard, 11.5 hours from Khushpreet Mehton, 19.75 hours from Stephanie Ross, and 18.75 hours from the four paralegals, collectively. (Mot. 6; Hubbard Decl., Ex. 2.) The bulk of the fee request centers on mediation, summary judgment, and trial preparation. (Mot. 6.) Based on the hours worked, Plaintiff requests a total of $35,211.25 in attorneys' fees.[4] (Mot. 6; Hubbard Decl., Ex. 2.)

The firm's billing statement provides a detailed time record that describes the work performed. (Hubbard Decl., Ex. 2.) Defendant argues that certain entries are unreasonable, duplicative, or wholly unnecessary. (Opp'n 5, ECF No. 52.) For example, Defendant takes issue with Scottlynn Hubbard speaking with Plaintiff regarding a "new case" on March 17, 2016, and again on March 28, 2016, regarding "barriers and new lawsuit." (*Id.*; *see* Hubbard Decl., Ex. 2.) Defendant also doubts that it took Scottlynn Hubbard thirty minutes to conduct a conflict check on March 28, 2016, or to prepare a fee agreement on April 7, 2016. (Opp'n 6.)

Considering the substantial experience of Plaintiff's counsel, the Court finds that 82.55 hours of attorney time on this case is excessive. Plaintiff, represented by DAG, has filed at least 622 ADA cases in the Central District of California alone, and has filed many others within California District Courts as a whole. (Gabriel Decl., Ex. A.) "Plaintiff readily admits he's filed between 1,500–2,000 ADA claims in the last five years." *Sym Properties, LLC*, 2017 WL 4586348, at *6 n.3 (citing Vogel's deposition testimony). Plaintiff's counsel argues that the number of cases filed previously has no bearing on the reasonableness of attorneys' fees.[5] (Reply 2, ECF

---

[4] This total includes $16,080 for Scottlynn Hubbard's services, $3,450 for Lynn Hubbard's services, $4,600 for Mehton's services, $5,925 for Ross' services, and $5,156.23 for the paralegals' collective services. (Mot. 6; Hubbard Decl., Ex. 2.)

[5] Plaintiff's counsel also denies being a vexatious litigant and argues that the firm files a large number of ADA cases because "the bulk of disabled plaintiffs are represented by a small number of firms who are willing to tolerate such outlandish accusations." (Hubbard Decl. ¶¶ 6–9.) However, it seems some of these accusations have proven true. *See, e.g.*, *Vogel v. Tulaphorn*, No. CV 13-464 PSG (PLAX), 2014 WL 12629679, at *6 (C.D. Cal. Jan. 30, 2014) (emphasis in original) (finding

No. 53.) The Court disagrees. In addition to representing other clients, DAG attorneys have litigated ADA claims on behalf of Martin Vogel in hundreds, if not thousands, of cases, many of which have identical legal issues and similar factual issues. *See, e.g.*, *Vogel v. Winchell's Donut Houses Operating Co., LLP*, 252 F. Supp. 3d 977 (C.D. Cal. 2017); *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998 (C.D. Cal. 2014).

Plaintiff initiated the majority of those cases with complaints nearly identical to the one in this case. (*See* Compl.); *e.g.*, *Vogel v. Plaza Edinger, LLC*, No. 2:17-cv-04763-ODW-PLA; *Vogel v. SEJ Asset Management*, No. 8:17-cv-00569-DOC-RAO; *Vogel v. KC Southcoast, Inc.*, No. 8:17-cv-00483-CJC-KES. Moreover, Plaintiff's summary judgment motion substantially duplicated a motion from a previous case. (*See* ECF No. 36); Mot. Summ. J., *Vogel v. Sym Properties, LLC*, 2017 WL 4586348 (C.D. Cal. Aug. 4, 2017) (No. 2:15-cv-09855-AB-ASx), ECF No. 29.) Even Plaintiff's Motion for attorneys' fees is not unique to this case. (*See* ECF No. 50.) The factual background of its Motion is taken from the Court's summary judgment order (*see* ECF No. 47), and the discussion section is taken, almost word for word, from the Court's decision in *Rocca.* 2017 WL 2562097, at *3–5. Therefore, the fee motion should not have taken lead counsel Scottlynn Hubbard nearly seven hours to draft. (*See* Hubbard Decl., Ex. 2.) While Plaintiff's counsel prepared for and attended two mediations, they propounded no written discovery, did not take any depositions, and filed only one unopposed motion, which was duplicative of a motion they had filed on previous occasions.

Though Plaintiff's counsel argues they do not "churn" legal fees because of their contingency fee agreement with the Plaintiff, they have the requisite knowledge, expertise, and skill to practice ADA law more efficiently. Considering DAG's history

---

that Martin Vogel's DAG attorneys "falsely represented to this Court and Defendant, over many months of litigation, that Plaintiff encountered access barriers during a prefiling visit to the restaurant that he *never actually made*"); *see also Sym Properties, LLC*, 2017 WL 4586348, at *7.

with this particular plaintiff, the firm's experience in ADA litigation, their unopposed and/or duplicate motions, and the fact that DAG attorneys attended only two mediations, the Court finds that spending 82.55 hours on this litigation is excessive. *See Iverson v. Braintree Prop. Assocs., L.P.*, No. 04CV12079-NG, 2008 WL 552652, at *3 (D. Mass. Feb. 26, 2008) (quoting *Brother v. Miami Hotel Investments, Ltd.*, 341 F. Supp. 2d 1230, 1236 (S.D. Fla. 2004) (reducing attorneys' fees by 40% because plaintiff's counsel "should have been able to litigate this unexceptional case by utilizing the formulaic approach that served him so well in all the similar cases he handled").

Additionally, Defendant's two Federal Rule of Civil Procedure ("FRCP") 68 offers shed light on Plaintiff's unreasonableness in resolving the case. On June 21, 2016 and October 14, 2016, Defendant served plaintiff with two separate FRCP 68 offers. (Gabriel Decl. 2, 6, Exs. B–C.) In the second offer, Defendant offered to pay Plaintiff $4,000, which is exactly the amount of damages Plaintiff received in the Court's Judgment. (*Id.*, Ex. B; ECF Nos. 47, 49.) While the two offers do not implicate FRCP 68(b) because Plaintiff's judgment included injunctive relief, and thus was more favorable than either offer, they demonstrate Defendant's reasonable efforts to settle the case and support the conclusion that Plaintiff continued in unreasonable litigation. Defendant made its second offer, for $4,000, in October 2016, more than a year before Plaintiff filed his motion for summary judgment. (Gabriel Decl., Ex. B.)

Finally, the Court must look to the *Kerr* factors to determine whether the lodestar figure is reasonable and if it should be adjusted. *Kerr*, 526 F.2d at 70. The issues presented in this case are not complex, nor do they involve novel questions of law. *See Spalluto v. Trump Int'l Hotel & Tower*, No. 04CIV.7497(RJS)(HBP), 2008 WL 4525372, at *13 (S.D.N.Y. Oct. 2, 2008) (noting that issues regarding whether the hotel's entrance path, common-areas, restrooms, and guest rooms comply with the ADA "were rather simple, especially in light of the [counsel's] experience in ADA cases"). Therefore, this factor warrants a reduction in attorneys' fees.

Further, the Supreme Court held in *Hensley*, 461 U.S. at 434–40, that the extent of a Plaintiff's success is a "crucial factor" in determining whether to reduce the loadstar figure. *See also Kerr*, 526 F.2d at 70 (noting that "results obtained" may warrant a reduction of the loadstar figure). Plaintiff's partial success on its summary judgment motion, while also considering prior settlement offers, further supports the reduction of attorneys' fees. (*See* ECF No. 47); *Hensley*, 461 U.S. at 436–37 ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.").

For the reasons above, the Court reduces the number of hours expended by 65%. DAG's purported 82.55 hours is accordingly reduced to 28.90 hours. As such, the Court finds that Plaintiff's request for $35,211.25 in attorneys' fees is unreasonable and awards Plaintiff a total of $6,425.88 in attorneys' fees.

| Name | Rate | Hours | Total |
| --- | --- | --- | --- |
| S. Hubbard | $300.00 | (26.8 x .35) = 9.38 | $2,814.00 |
| L. Hubbard | $300.00 | (5.75 x .35) = 2.0125 | $603.75 |
| Mehton | $200.00 | (11.5 x .35) = 4.025 | $805.00 |
| Ross | $200.00 | (19.75 x .35) = 6.9125 | $1,382.50 |
| Kaina | $125.00 | (5.5 x .35) = 1.925 | $240.63 |
| Iverson | $125.00 | (5 x .35) = 1.75 | $218.75 |
| Vonderhaar | $125.00 | (1.25 x .35) = .44 | $55.00 |
| Tokugawa | $125.00 | (7 x .35) = 2.45 | $306.25 |
| | **TOTAL** | **28.90** | **$6,425.88** |

### B. Litigation Expenses and Costs

In addition to attorneys' fees, the ADA authorizes a court to award litigation expenses and costs to a prevailing part. *See* 42 U.S.C. § 12205; *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002). Here, Plaintiff seeks $2,810.95 in litigation

expenses and costs. (Mot. 7.) In support of its Motion, Plaintiff submits detailed documentation of the claimed litigation expenses and costs. (Hubbard Decl., Ex. 3.)

"As with attorney[s'] fees, the Court may consider the degree of success in awarding litigation expenses under fee-shifting statutes." *Pierce v. Cty. of Orange*, 905 F. Supp. 2d 1017, 1048 (C.D. Cal. 2012). Here, the ADA is a fee shifting statute and "recognizes that litigation expenses are *part of* a reasonable attorney fee." *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1296 (N.D. Cal. 2014) (citing 42 U.S.C. § 12205). Because litigation expenses and costs are included as part of the attorneys' fees recoverable under the ADA, they are subject to partial success reduction. After the Court ordered Plaintiff to show cause why two of his four claims against the defendant—the Disabled Persons Act and California Health and Safety claims—should not be dismissed for lack of subject matter jurisdiction, Plaintiff withdrew the two claims altogether. (ECF Nos. 47–48.) Therefore, Plaintiff gained only partial success in this action, which warrants a reduction in these expenses by 50%. Accordingly, the Court awards Plaintiff $1,405.48 in litigation expenses and costs.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion. (ECF No. 50.) Specifically, Defendant is ordered to pay Plaintiff $6,425.88 in attorneys' fees and $1,405.48 in litigation expenses and cost, for a **total of $7,831.36**

**IT IS SO ORDERED.**

April 5, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**